*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CARDELL GRAYSON,

Defendant-Appellant.

UNPUBLISHED
January 30, 2020

No. 343596
Macomb Circuit Court
LC No. 2016-002999-FH

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Defendant appeals of right his convictions by a jury of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, of carrying a concealed weapon (CCW), MCL 750.227, and of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 1 to 10 years' imprisonment for the felon-in-possession conviction, 1 to 10 years' imprisonment for the CCW conviction, and five years' imprisonment for the felony-firearm conviction.

In his appeal Defendant raises two issues. The first alleges a sentencing error. This issue has been addressed by a prior remand order of this Court and is no longer before the Court.[1] The second alleges Defendant is entitled to a new trial because the trial court failed to establish an appropriate waiver of counsel.

Concluding that there is no merit to his assignment of error regarding his waiver of counsel and being satisfied any errors related to his sentencing have been corrected, we affirm.

---

[1] *People v Grayson*, unpublished order of the Court of Appeals, entered January 3, 2019 (Docket No. 343596).

-1-

## I. BACKGROUND

This case arises out of the breaking and entering of a home in Warren, Michigan, on February 16, 2016. Officers Paul Kulisek, Colin McCabe, and Scott Betcher responded to a complaint by a neighbor who heard a banging noise coming from a nearby abandoned house and arrived at the scene around 2:30 a.m. When the police approached the house, defendant appeared from behind it. Officer Kulisek ordered defendant to put his hands up. Defendant stood in the driveway between two cars where the officers could not see what he was doing. Defendant made a dropping motion with his hands and Officer Kulisek heard the sound of metal hitting the ground. On investigation, the officers found a handgun between the two cars. The officers arrested defendant.

At trial, defendant represented himself. The jury found defendant guilty of three of the charged offenses but acquitted him of breaking and entering with the intent to commit a larceny, MCL 750.110. The trial court originally ordered defendant's sentences for felon-in-possession and CCW to run concurrently to each other and consecutive to his sentence for felony-firearm. The trial court also awarded defendant 666 days of credit for time served for the felony-firearm sentence and zero days of credit for both the felon-in-possession and CCW sentences.

On appeal, defendant raised the issue that his sentences for CCW and felony-firearm should be served concurrently, and that he should receive 666 days of jail credit for time served for both the CCW and felony-firearm sentences, pursuant to *People v Wyatt*, 470 Mich 878; 683 NW2d 143 (2004), and *People v McCrady*, 213 Mich App 474, 486; 540 NW2d 718 (1995), which established that sentences for CCW and felony-firearm must run concurrently. Defendant moved in this Court for remand on this issue. This Court granted defendant's motion and remanded this case to the trial court to allow defendant to move for resentencing to address this issue. *People v Grayson*, unpublished order of the Court of Appeals, entered January 3, 2019 (Docket No. 343596). On remand, the trial court entered a stipulated order sentencing defendant to serve his felony-firearm and felon-in-possession sentences consecutively, but amended his sentences for CCW and felony-firearm to run concurrently. The trial court awarded defendant 666 days of credit for time served for both CCW and felony-firearm. Because this issue has been resolved, it has been rendered moot and we decline to address it.

## II. VALIDITY OF WAIVER OF COUNSEL

Defendant argues that he did not validly waive his right to counsel on the ground that the trial court failed to comply with the waiver requirements. We disagree.

"In order to preserve an issue for appellate review, it must be raised before and considered by the trial court." *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). At trial, defendant requested to represent himself, and the trial court allowed him to do so. At no time did defendant object to the validity of his own waiver of his right to counsel. Defendant, therefore, failed to preserve this issue for appeal. Because defendant failed to preserve this issue, it is subject to plain error review. *People v Gibbs*, 299 Mich App 473, 492; 830 NW2d 821 (2013). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999)

(citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). Defendant bears the burden of establishing that he suffered prejudice. *Id*. (citation omitted). If defendant satisfies the three elements, "an appellate court must exercise its discretion in deciding whether to reverse." *Id*. (citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, citations, and alteration omitted).

The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). The Sixth Amendment right to counsel is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Gideon v Wainwright*, 372 US 335, 83 S Ct 792, 9 L Ed2d 799 (1963). "The United States Constitution does not, however, force a lawyer upon a defendant; a criminal defendant may choose to waive representation and represent himself." *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). "While a defendant may choose to forgo the assistance of counsel at trial, any waiver of the right to counsel must be knowing, voluntary, and intelligent." *Russell*, 471 Mich at 188.

In *Russell*, our Supreme Court explained:

> Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.

> In addition, a trial court must satisfy the requirements of MCR 6.005(D), which provides in pertinent part as follows:

> > The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

> > (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> > (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer. [*Id*. at 190-191, citing *People v Anderson*, 398 Mich 361, 247 NW2d 857 (1976).]

"[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Russell*, 471 Mich at 191-192. However, a trial court does not need to follow a "litany approach" in order to comply with the requirements of *Anderson* and MCR 6.005(D). *Id*. at 191. "Substantial compliance requires that the court discuss the substance of

both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Id*. (citation omitted). "Proper compliance with the waiver of counsel procedures . . . is a necessary antecedent to a judicial grant of the right to proceed in propria persona. Proper compliance requires that the court engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *People v Hicks*, 259 Mich App 518, 523; 675 NW2d 599 (2003) (quotation marks and citation omitted, alteration in the original). "Before a trial court grants a request for self-representation, the trial court must find (1) that the request is unequivocal; (2) that the assertion of the right of self-representation is knowing, intelligent, and voluntary, with the defendant having been made aware by the trial court of the dangers and disadvantages of self-representation; and (3) that the defendant will not unduly disrupt the court while acting as his own counsel." *Id*. (citations omitted).

Throughout the pendency of this case, defendant requested to represent himself on multiple occasions, both before and during trial. Defendant concedes that the trial court addressed some of the *Anderson* factors and the requirements of MCR 6.005(D). Defendant, however, contends primarily that the trial court failed to satisfy the third requirement by failing to make a finding that defendant would not disrupt or inconvenience the proceedings when defendant had in fact been disruptive throughout the pendency of this case. Although defendant represented himself at different times throughout the proceedings, defendant does not take issue with any particular proceeding. Instead, he contends that, "[a]s a result of the court's failure to observe constitutional requirements and court rules, [he] did not go into his trial with eyes open, fully understanding the consequences of his decision to represent himself."

In *Anderson*, our Supreme Court stated, "[t]he trial court must make the Pro se defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Anderson*, 398 Mich at 368 (citation omitted). The Court explained that a "[d]efendant's competence is a pertinent consideration in making this determination." *Id*. (citation omitted). Competence, however, does not refer to legal skills, and therefore, a technical legal knowledge is "not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself." *Id*. (quotation marks and citation omitted).

Defendant contends that the trial court never inquired regarding his competence to represent himself despite concerns that he lacked competence to stand trial in another case. At a November 7, 2016 pretrial hearing, defense counsel stated that defendant awaited a psychiatric evaluation to determine competency in an unrelated case in Wayne County. Defense counsel requested that the trial court schedule the next hearing in this case after the date of defendant's competency hearing in the event that he was found incompetent following the evaluation. Defense counsel stated that she was not going to request a competency hearing in this case because she felt pretty sure defendant would be rendered competent in the upcoming evaluation. The parties, as well as the trial court, agreed that if the evaluation indicated that defendant lacked competency, the issue would need to be addressed. At the next hearing, on January 4, 2017, defendant's competency was not addressed. However, defendant concedes on appeal that he was found competent to stand trial in the unrelated case.

-4-

## A. PRETRIAL PROCEEDINGS

Defendant first requested to represent himself at the July 17, 2017 hearing on his motion to quash and dismiss which he filed pro se on July 7, 2017. At the hearing, defendant argued that (1) the charge for felon-in-possession violated defendant's Second Amendment right, and (2) the prosecution failed to present evidence that defendant's right to carry a weapon was not restored. The trial court denied defendant's motion. Defendant then requested that he represent himself. The trial court explained that defendant had a constitutional right to be represented by an attorney or to represent himself. Defendant stated that he understood his rights. The trial court recounted the charges against defendant and the accompanying potential sentences if convicted, and defendant acknowledged that he could face life in prison. The court discussed the risks of self-representation, including that defendant would be held to the same standard as an attorney and the court could not assist him. The court ordered that defendant's counsel stay on as advisory counsel. After informing defendant of his rights and seeking his responses during the inquiry, the trial court found that defendant unequivocally, knowingly, intelligently, and with understanding of the disadvantages of self-representation chose to represent himself, and that he would not disrupt the proceedings.

On September 5, 2017, the trial court held a pretrial hearing. The trial court asked defendant whether he still planned to represent himself, to which he replied that he did. The trial court stated that it must inform him of his rights at every hearing and explained to defendant that he had the right to an attorney even if financially unable to afford one, recounted the charges against defendant and the accompanying potential sentences if convicted, and inquired into defendant's educational background, to which defendant responded that he had received his GED. The trial court discussed the risks associated with self-presentation, explaining that there are rules of evidence and procedure that must be followed, jury instructions must be put together, neither the prosecutor nor the court would give defendant special treatment, and issues may need to be preserved for appeal that could be waived if defendant did not understand how to preserve an issue. Defendant asserted that he understood. The trial court informed defendant that self-representation is almost always unwise, to which defendant stated that he understood. The trial court found that defendant unequivocally, knowingly, intelligently, and with understanding of the disadvantages of self-representation chose to represent himself, and that he would not disrupt the proceedings.

On September 11, 2017, the court held a motion hearing, at which defendant argued that the court did not have jurisdiction over defendant because a complaint was never filed. The hearing was adjourned, and the court requested that a copy of the complaint be brought to the next hearing. At the start of the hearing, the trial court again asked defendant whether he desired to represent himself, to which defendant responded affirmatively. The trial court engaged in the required colloquy, explaining that rules and procedures must be followed, issues may need to be preserved for appeal, defendant would not receive special treatment, and advisory counsel could not significantly interfere. The trial court found that defendant unequivocally, knowingly, intelligently, and with understanding of the disadvantages of self-representation chose to represent himself, and that he would not disrupt the proceedings, unduly inconvenience, or burden the court.

During a September 14, 2017 motion hearing, at which defendant again contested the court's jurisdiction, the trial court explained to defendant again that he was entitled to an attorney's assistance at all court proceedings. At that time, defendant expressed that he would like a new attorney appointed for him other than his advisory counsel. Defendant expressed that he wanted an attorney, but he did not want to "stipulate" to allow the attorney to "fight the case" for him because he could not know before meeting the new attorney whether the new attorney could capably handle his case. Defendant ultimately agreed to have his advisory counsel, Michael B. Kilpatrick, appointed to represent him and agreed to inform the trial court at the next hearing whether he wanted to proceed with representation or without counsel.

On November 20, 2017, the trial court held a hearing regarding defendant's application for a writ of habeas corpus previously filed by defendant pro se. The trial court denied defendant's request. Following the trial court's denial, defendant asserted that he wanted to fire Kilpatrick for failing to assist him. The trial court ultimately agreed to appoint defendant new counsel.

On November 27, 2017, the trial court held a pretrial hearing. Steven G. Freers appeared on behalf of defendant as his newly appointed counsel. The trial court agreed to adjourn trial again to allow Freers to become familiar with the case. Then on February 5, 2018, the trial court held a final pretrial hearing. At the start of the hearing, defendant stated that he wanted to represent himself because Freers failed to respond to any of defendant's letters. Freers explained that he had addressed all of defendant's requests, but defendant was never satisfied. The trial court explained to defendant that he could represent himself if he wished, but that the trial had already been adjourned eight times and it would not be adjourned again. Defendant walked out of the hearing upset, and the trial court ordered that Freers remain defendant's counsel for trial.

At each of these pretrial hearings, the trial court satisfied the requirements of MCR 6.005(D) and *Anderson*. Pursuant to MCR 6.005(D), the court explained the charges against defendant and the accompanying sentences if convicted, discussed the risks associated with self-representation, and informed defendant that he had the right to counsel even if he could not afford an attorney. Each time, following the court's colloquy regarding defendant's rights and the disadvantages of self-representation, defendant acknowledged that he understood the risks and his rights, and informed the trial court that he chose to waive his right to counsel. On the basis of defendant's acknowledgment of the risks and his insistence on representing himself, the trial court found each time that defendant unequivocally, knowingly, voluntarily, and intelligently chose to represent himself without counsel, and that he would not disrupt or inconvenience the proceedings. The trial court satisfied the requirements of *Anderson* and MCR 6.005(D).

## B. TRIAL

On February 13, 2018, defendant's trial commenced. Despite being represented by counsel at the start of trial, defendant quickly reasserted his right to represent himself before jury selection. Defendant stated, "I want to take my own case" because no matter what he discussed with Freers, he "can't get through." When questioned as to whether he really wanted to take his own case, defendant repeated multiple times that he wanted to take his own case. Thus,

defendant made an unequivocal request to represent himself as required under the first *Anderson* requirement.

Regarding the second *Anderson* requirement, that defendant asserted his right knowingly, intelligently, and voluntarily, the record reflects that, following defendant's insistence that he represent himself, the trial court advised defendant of the dangers and disadvantages of self-representation. The trial court informed him that it is almost always unwise for a defendant to represent himself and explained the risks associated with self-representation, including the need to know the elements of the offenses, the court rules, the rules of evidence and procedure, and understand the ways to preserve issues for appeal. The trial court made clear that defendant could forfeit an issue for appeal if he failed to preserve an issue during trial. The trial court explained to defendant that the prosecutor was an experienced trial lawyer and neither the prosecutor nor the trial court would be able to give defendant special treatment. Defendant asserted that he understood the disadvantages of self-representation.

The trial court did not err in allowing defendant to represent himself or in failing to specifically inquire into his competency to represent himself. Although he often raised legal issues that were unfounded or irrelevant, a defendant's lack of legal knowledge does not render him incompetent to represent himself. *Anderson*, 398 Mich at 368. Further, defendant appeared to be aware of the details of his own case, the elements of the charged offenses, and the possible penalties if convicted. Defendant understood that he faced life in prison. The record reflects that the trial court determined that defendant earned his GED. Defendant also acknowledged on multiple occasions that he understood the risks associated with self-representation. Defendant represented himself during four days of trial. The record indicates that he thoroughly cross-examined witnesses against him. He successfully advocated for himself and the jury acquitted him of breaking and entering with the intent to commit larceny. The record establishes that defendant went to trial "with eyes open."

Regarding the third *Anderson* requirement, that defendant's self-representation will not disrupt, unduly inconvenience, or burden the court and the administration of the court's business, the record reflects that the trial court specifically addressed this requirement with defendant. During the colloquy between the trial court and defendant, the trial court stated, "[a]nd also, sir, what you can't also do and you've got to promise me this because I won't let you do this. Disrupt these proceedings. If you don't understand something, the court has to keep moving on. You can't disrupt the proceedings. Do you understand that?" Defendant answered affirmatively. Therefore, defendant's primary argument on appeal, that the trial court failed to find that defendant would not disrupt, unduly inconvenience, and burden the court, lacks merit. The trial court specifically addressed this issue and warned defendant that he could not disrupt the proceedings.

The record also reflects that the trial court complied with the requirements of MCR 6.005(D). It discussed the charges against defendant, the potential sentences if convicted of the charged offenses, and the risks associated with self-representation. The trial court specifically advised defendant that he could face life in prison. The trial court addressed the risk of self-representation, explaining that a lack of legal knowledge could result in a failure to preserve issues for appeal. Further, the trial court told defendant, "[f]irst of all, you absolutely understand that you are entitled to a lawyer's assistance at all times in these court proceedings?" Defendant

responded affirmatively. The trial court reiterated that, even if defendant could not afford an attorney, his advisory counsel would remain present to serve as his appointed counsel if he wished.

On each day of trial the trial court engaged defendant in a colloquy to ensure that defendant understood his rights and voluntarily waived his right to counsel. The trial court explained to him that he had the right to counsel, discussed the disadvantages associated with self-representation including the risk of not understanding the rules of evidence and procedure or how to preserve an issue for appeal. Defendant reaffirmed that he wished to waive his right to counsel on each occasion. The trial judge, therefore, properly found that defendant voluntarily, knowingly, and intelligently waived his right to counsel.

The record in this case establishes that the trial court satisfied all of the requirements set forth in *Anderson* and MCR 6.005(D). Defendant, therefore, validly waived his right to counsel. Accordingly, defendant is not entitled to a new trial.

Affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford