# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

WALTER LYNN SBRESNY,

    Defendant-Appellant.

UNPUBLISHED
February 26, 2015

No. 318686
Kalkaska Circuit Court
LC No. 11-003369-FH

Before: SAAD, P.J., and OWENS and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals his jury conviction of manufacturing a controlled substance under MCL 333.7401(2)(d)(*ii*). For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On April 7, 2011, the police arrested defendant's son for possession of marijuana. When asked where he got the marijuana, defendant's son told a Kalkaska sheriff's deputy that he took it from defendant's home without permission. The sheriff's deputy went to defendant's home later that evening to speak with him. When defendant opened the door, the deputy smelled an "overwhelmingly" strong odor of marijuana. Defendant told the deputy that he was a medical marijuana user and "caregiver," showed him his credentials, and claimed he was allowed to have 24 plants inside his home.

When defendant refused to let the deputy look at his marijuana growing operation, the deputy obtained a warrant. When he searched defendant's basement, the deputy found a large marijuana growing operation, including 145 marijuana plants—which ranged in height from four inches to four feet—ballasts, and reflective material. The prosecution charged defendant with violation of MCL 333.7401(2)(d)(*ii*) in the Kalkaska Circuit Court.

Defendant moved to suppress the evidence obtained through the execution of the deputy's search warrant—which included the marijuana plants. Defendant claimed that the affidavit with which the deputy supported the warrant was intentionally false and misleading because: (1) defendant supposedly gave the deputy his medical marijuana "caregiver" card, as opposed to an ordinary medical marijuana card; (2) defendant did not speak with the deputy about "clones" of marijuana plants, contrary to the affidavit; and (3) the deputy "improperly" concluded that defendant's marijuana was not secure.

-1-

At a hearing on defendant's motion, the trial court heard testimony from defendant and the deputy, as well as another police officer who accompanied the deputy to defendant's home. The police officer corroborated the deputy's version of events, which were recorded in the affidavit supporting the search warrant. On the basis of the parties' testimony, the trial court concluded that the affidavit did not contain false or misleading statements, and that the search warrant was valid.[1] It accordingly denied defendant's motion to suppress.

In late April 2013, defendant told the court that he wanted to represent himself.[2] After engaging in a long exchange with defendant over the risks entailed in self-representation, and after defendant's repeated assertions that he understood the risks involved and that he made the decision of his own volition, the trial court granted defendant's request.[3]

On appeal, defendant argues that the trial court erred when it refused to suppress the evidence obtained from the search warrant. He also makes the unpreserved claim that he was denied his right to counsel, because his waiver of his court-appointed attorney was not valid.

## II. STANDARD OF REVIEW

A trial court's findings of fact at a suppression hearing are reviewed for clear error, while questions of law and the ultimate decision whether to suppress the evidence are reviewed de novo. *People v Crockran*, 292 Mich App 253, 256; 808 NW2d 499 (2011).

Unpreserved constitutional issues are reviewed for plain error that affects a substantial right. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). A trial court's interpretation of the law or application of a constitutional standard to uncontested facts are reviewed de novo. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004).

## III. ANALYSIS

## A. MOTION TO SUPPRESS

Both the federal and state constitutions protect individuals from unreasonable searches and seizures, and probable cause is required to justify a search before the issuance of a search warrant. US Const, Am IV; Const 1963, art 1, §11. Probable cause exists "where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006) (internal quotation marks omitted). "Probable cause must be supported by oath or affirmation."

---

[1] The trial court concluded that defendant's complaint about the type of medical marijuana card he presented to the deputy was irrelevant to the warrant request.

[2] Defendant was represented by three different court-appointed attorneys prior to his decision to represent himself.

[3] The trial court revisited the issue of defendant's self-representation multiple times throughout the proceedings to ensure defendant understood the consequences of his decision.

*Id.* If probable cause is supported by an affidavit, "the affidavit must contain facts within the knowledge of the affiant," rather than mere conclusions or beliefs. *Id.*

An affidavit supporting a search warrant is presumed to be valid. *Franks v Delaware*, 438 US 154, 171; 98 S Ct 2674; 57 L Ed 2d 667 (1978). However, a defendant is entitled to a hearing to challenge the validity of a search warrant if he: (1) makes a substantial preliminary showing that a false statement was knowingly and intelligently included by the affiant in the affidavit, or included in the affidavit with a reckless disregard for the truth; and (2) the allegedly false statement was necessary to find probable cause. *Martin*, 271 Mich App at 311. If the defendant succeeds in showing the above two factors by a preponderance of the evidence, the trial court may grant his motion to suppress. *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992).

Here, defendant failed to show by a preponderance of the evidence that the deputy knowingly, intentionally, or recklessly, inserted a false statement into the affidavit in support of the search warrant, or that such a false statement was necessary to find probable cause. Both police witnesses testified at the suppression hearing that defendant engaged in a prolonged argument over whether a "clone" constituted an individual marijuana plant. When coupled with defendant's refusal to tell the deputy how many plants he had inside his home, and the "overwhelmingly" strong smell of marijuana emanating from defendant's house, this conversation properly supported the deputy's conclusion that defendant was growing more marijuana than allowed by law. Moreover, as he recounted in part at the hearing, the deputy had reason to conclude that defendant did not properly secure his marijuana—defendant's son took marijuana from defendant's home without his knowledge, and defendant told the deputy that he did "not necessarily" secure his processed marijuana.[4]

Accordingly, the trial court properly denied defendant's motion to suppress the evidence obtained from the search warrant.

## B. WAIVER OF COUNSEL

A criminal defendant has a constitutional right to counsel at all critical stages of the legal process. US Const, Am VI; Const 1963, art 1, § 13. Courts cannot force a defendant to accept representation from a lawyer if the defendant wishes to waive representation and act pro se. *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004).

When a defendant requests to waive his right to counsel and proceed pro se, a court must determine that:

> (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the

---

[4] As the trial court correctly noted, the specific type of medical marijuana card provided by defendant to the deputy was irrelevant to the warrant request.

defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Russell*, 471 Mich at 190.]

In addition, the trial court must comply with MCR 6.005(D)(1), which requires that it apprise the defendant of the charge, the maximum possible prison sentence, any mandatory minimum sentence, and the risks involved in self representation. *Id*. at 190.

Here, defendant initially expressed his desire to represent himself at a pretrial hearing on April 26, 2013. After defendant made this request, the trial court engaged in an extensive colloquy with defendant to ascertain whether defendant actually wanted to represent himself, and whether he was aware of the potential risks in doing so. The trial court specifically informed defendant that he: (1) was charged with manufacturing a controlled substance; (2) faced a maximum prison sentence of seven years; and (3) was not an attorney and would therefore be at a disadvantage during trial. The court further specified that it would hold defendant to the same standards as the prosecution, including the enforcement of the rules of evidence, and reminded defendant that he was entitled to an attorney. As such, the trial court fully complied with its duties under *Russell* and MCR 6.005(D)(1).

During the trial court's colloquy with him, defendant unequivocally waived his right to counsel.[5] He acknowledged that he understood the possible consequences of self-representation, but nonetheless specifically stated that he voluntarily and knowingly had decided to represent himself. And at subsequent pre-trial hearing in July 2013, and at trial itself, defendant confirmed that he wished to waive the right to counsel and proceed pro se—after he was yet again asked by the trial court whether he wished to continue pro se, and informed of the risks in doing so.

Defendant therefore waived his right to counsel, and his argument that the trial court erred in allowing him to proceed without counsel has no merit.

Affirmed.

/s/ Henry William Saad
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly

---

[5] Defendant attempts to obscure this fact by claiming that his statement that he wished to represent himself was actually an attempt to secure alternative counsel. It is quite clear from defendant's own statements and the wider record that he intended to represent himself, and that he merely informed the court of the possibility that he might hire a new attorney in the future.