*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PAUL MARTIN COLLINS,

        Defendant-Appellant.

UNPUBLISHED
October 12, 2023

No. 361029
Luce Circuit Court
LC No. 2019-001481-FH

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of possession with intent to deliver methamphetamine and maintaining a drug house. The trial court sentenced defendant to 3 to 20 years' imprisonment for the possession with intent to deliver conviction and 286 days in jail for the maintaining a drug house conviction. Because the trial court failed to advise defendant of his right to counsel, we vacate his convictions and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant was arrested after the Michigan State Police Department's Upper Peninsula Substance Enforcement Team ("UPSET") conducted a controlled purchase of methamphetamine using a confidential informant. Detectives eventually seized from defendant's property digital scales, multiple empty ziplock bags, two used glass pipes, and a blue straw. A search of defendant revealed a container with a substance that was later confirmed to be 2.5665 grams of methamphetamine. In an interview with an UPSET trooper, defendant admitted his possession of methamphetamine but denied selling it, and stated that he used methamphetamine to treat his medical conditions.

During the pretrial phase, defendant was represented by three different attorneys. Attorney Mark L. Dobias, who replaced the second attorney, eventually moved to withdraw as defendant's counsel. At the hearing on the motion to withdraw, the trial court asked defendant if he wished to go forward representing himself, to which defendant responded, "Yes. Absolutely." The trial court explained to defendant that he had the right to appointed counsel or that defendant could hire his own counsel. Defendant stated that he intended to hire a different attorney, but he noted that

-1-

he was not sure if that attorney intended to take his case. The trial court told defendant that he needed counsel and that the trial court was not going to release Dobias unless defendant hired his own counsel or wished to represent himself. Defendant again asserted that he wished to represent himself.

The trial court placed defendant under oath and obtained defendant's waiver of appointed counsel on the record. The trial court informed defendant of the charges against him and the maximum penalties defendant could face for each charge if convicted, and defendant confirmed that he understood. Additionally, the trial court confirmed with defendant that he understood his right to an attorney, and that if he exercised that right, his defense counsel would be Dobias. Finally, the trial court confirmed that defendant understood the rules of evidence and that he would be at a "great disadvantage at trial" because the prosecutor was a trained attorney. Defendant agreed that he understood those rights and expressed that he wanted to proceed with representing himself. The trial court found that defendant had knowingly, intelligently, and voluntarily waived his right to counsel.

At the final pretrial hearing, the prosecutor stated to the trial court that defendant had been offered a plea agreement under which defendant would plead guilty to the lesser included offense of possession of methamphetamine in exchange for time served with no probation. The trial court asked defendant whether he had any questions about the plea offer, and defendant responded that he was "clear on the plea offer" and that he wanted to go to trial. Dobias asked the court to clarify what his role was to be at trial. Defendant stated that he did not care whether Dobias assisted in jury selection, opining that "it doesn't really matter who's on the jury" because defendant believed that the prosecutor did not have a "snowball's chance in hell of convicting [him] of possession with intent to deliver," and he "fully expect[ed] to be convicted of the lesser charge." The trial court reminded defendant that the prosecutor had "offered a plea to that charge," but defendant insisted that he would not be "convicted of the higher offense," and stated that he would "roll the dice." Defendant fell asleep during this discussion and had to be awakened by the bailiff. Once awakened, the trial court asked defendant if he was all right, and defendant explained "that's going to happen" because of his narcolepsy.

During his trial, defendant participated in voir dire, provided an opening statement, performed the cross-examination of each of the prosecutor's witnesses, and recalled a prosecution witness to the stand in his defense. Defendant also testified on his own behalf, during which he admitted that he possessed methamphetamine but denied that he sold drugs. Defendant testified that he had narcolepsy and cataplexy and that he purchased methamphetamine in large quantities to "self-medicate." Defendant acknowledged that methamphetamine was not "an ideal medication," but he explained that "it's a stimulant" and that "stimulants keep [him] from falling down."

The jury returned a verdict of guilty of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), and maintaining a drug house, MCL 333.7405(1)(d). Defendant was sentenced as previously noted, and this appeal followed.

## II. STANDARDS OF REVIEW

"When assessing the validity of a defendant's waiver of the right to counsel, we review de novo the entire record to determine whether the trial court's factual findings regarding the waiver were clearly erroneous." *People v Willing*, 267 Mich App 208, 218; 704 NW2d 472 (2005). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019) (quotation marks and citation omitted).[1]

## III. ANALYSIS

Defendant argues that he was denied his constitutional right to the assistance of counsel when the trial court allowed him to proceed *in propria persona*. More specifically, defendant contends that the trial court did not ensure that he validly made his initial waiver of counsel and that the trial court failed to reaffirm his waiver of counsel at the beginning of each subsequent proceeding as required by MCR 6.005(E). We agree the trial court clearly erred by failing to comply with MCR 6.005(E) at defendant's final pretrial hearing and, therefore, vacate defendant's convictions.

"A person accused of a crime and facing the possibility of incarceration has a constitutional right to have the assistance of a lawyer at every critical stage of the criminal process." *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016), overruled on other grounds by *People v Arnold*, 502 Mich 438, 444 (2018). "Defendants who face incarceration are guaranteed the right to counsel at all critical stages of the criminal process by the Sixth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment." *Willing*, 265 Mich App at 219. However, this constitutional right does not "force a lawyer upon a defendant." *Campbell*, 316 Mich App at 283. (quotation marks and citation omitted). Instead, a criminal defendant has the constitutional and statutory right to waive his right to counsel and choose to represent himself in criminal proceedings. See Const 1963, art 1, § 13; MCL 763.1.

Before a trial court may permit a defendant to represent himself or herself, it must determine that all three of the following requirements have been satisfied:

> (1) the defendant's request is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily after being informed of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Willing*, 267 Mich App at 219, citing *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976).]

The trial court must also comply with MCR 6.005(D), which states, in relevant part:

---

[1] Although defendant did not object to the trial court's failure to comply with MCR 6.005(E), he was not obligated to do so in order to preserve the issue for appeal. See *People v King*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 162327), slip op. at 11 ("[A] defendant need not affirmatively invoke their right to counsel in order to preserve that right—the right is preserved absent a personal and informed waiver, and it is not forfeitable.").

The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

A trial court's failure to substantially comply with these requirements renders the defendant's waiver of counsel ineffective. *People v Russell*, 471 Mich 182, 191-192; 684 NW2d 745 (2004).

> [T]rial courts must substantially comply with the aforementioned substantive requirements set forth in both *Anderson* and MCR 6.005(D). Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach. Further, we believe this standard protects the vital constitutional rights involved while avoiding the unjustified manipulation which can otherwise throw a real but unnecessary burden on the criminal justice system.

> Completion of these judicial procedures allows the court to consider a request to proceed in propria persona. If a judge is uncertain regarding whether any of the waiver procedures are met, he should deny the defendant's request to proceed in propria persona, noting the reasons for the denial on the record. The defendant should then continue to be represented by retained or appointed counsel, unless the judge determines substitute counsel is appropriate. [*Russell*, 471 Mich at 191 (quotation marks, citation, and emphasis omitted).]

The trial court substantially complied with the requirements of *Anderson* by ensuring that defendant's initial waiver of counsel was valid. The trial court engaged in an extensive dialogue with defendant after he confirmed that he would like to represent himself. On appeal, defendant argues that he only agreed to represent himself in lieu of proceeding with counsel that he did not trust; however, the record demonstrates that defendant was adamant that he wished to represent himself. First, the trial court advised defendant that he needed counsel and that the trial court was not going to release his current defense attorney unless defendant hired his own counsel or wished to represent himself. Defendant asserted that he would be "happy to represent [himself]." Next, the trial court advised defendant of the charges against him and the maximum penalties for each charge, and the trial court explained the disadvantages of self-representation. Defendant acknowledged that he understood the risks of self-representation and advised the court that he was aware of the rules of evidence. Finally, even after the court concluded that defendant had "knowingly, intelligently, and voluntarily waived his rights to counsel," the trial court urged

defendant to seek counsel. The trial court's extensive dialogue with defendant, and defendant's acknowledgment of the trial court's warnings, indicate that defendant unequivocally waived his right to counsel at the initial hearing. See *Williams*, 470 Mich at 645. We therefore disagree with defendant's first argument that his first waiver was not validly made.

We do agree, however, that the trial court clearly erred when it failed to reaffirm defendant's waiver of counsel at each subsequent proceeding as required by MCR 6.005(E), which states:

> Advice at Subsequent Proceedings. If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial or sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,
>
> (1) the defendant must reaffirm that a lawyer's assistance is not wanted; or
>
> (2) if the defendant requests a lawyer and is financially unable to retain one, the court must refer the defendant to the local indigent criminal defense system's appointing authority for the appointment of one; or
>
> (3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.
>
> The court may refuse to adjourn a proceeding for the appointment of counsel or allow a defendant to retain counsel if an adjournment would significantly prejudice the prosecution, and the defendant has not been reasonably diligent in seeking counsel.

"In most circumstances, these requirements would be adequately met by the judge telling the defendant that in the upcoming proceeding he has the right to an attorney, at public expense if necessary, and asking the defendant whether he wishes to have an attorney or continue to represent himself." *People v Lane*, 453 Mich 132, 137; 551 NW2d 382 (1996).

The trial court clearly erred when it failed to comply with the requirements articulated in MCR 6.005(E) by advising defendant of his continuing right to assistance of counsel and obtaining defendant's reaffirmation that he did not want such assistance at the final pretrial hearing and at trial. Nowhere in the record during the final pretrial hearing did the trial court "tell[] the defendant that in the upcoming proceeding he has the right to an attorney, at public expense if necessary, and ask[] the defendant whether he wishes to have an attorney or continue to represent himself."

The relevant question, therefore, is whether the trial court's error was harmless. See *Campbell*, 316 Mich App at 289 ("Unlike the rules relating to an initial waiver of counsel, the procedure outlined in MCR 6.005(E) does not stem from any constitutional requirement. And a trial court's failure to strictly comply with these requirements can be harmless error."). Defendant contends that the trial court's failure to comply with MCR 6.005(E) at the pretrial hearing caused

him to reject a favorable plea offer that would have resulted in no further incarceration or probation. Defendant insists that his conduct at the final pretrial hearing made it clear to the court that he could not intelligently waive his right to counsel because he did not understand the nature of the proceedings. We agree.

At the time defendant was first asked by the trial court whether he had any questions about the plea offer, defendant was under the impression that he would be able to "challenge th[e] evidence today." Although it was a final pretrial conference, defendant believed the proceeding that day was "where you determine whether or not the charges carry over, at pretrial." Although defendant acknowledged he already had a preliminary examination to determine whether there was probable cause, he wanted to challenge the prosecutor's evidence that supported the possession with intent charge. When the court advised defendant that the time to challenge that evidence was at trial, defendant responded, "I'd ask to go to trial."

The court then asked defendant if he "ha[d] a position" on the prosecutor's request to include an instruction for a lesser included offense of possession for the jury. Defendant responded that he did not "understand how they can charge me with two charges with the same charge." Defendant stated he was "essentially being charged with two separate crimes for the same crime." He continued: "I mean, I don't really get that, I guess. . . . Either I'm guilty trying to deal drugs, or I'm guilty of simple possession of drugs, which has been my position the entire time." Ultimately, defendant argued he did not think the instruction should be given to the jury because he "already served seven and a half months" and his guideline sentence for possession of methamphetamine would have been "zero to six months." Defendant concluded by remarking that he did not know why the prosecutor "wouldn't just simply charge me with possession of personal."

In response to defendant's remark that he "fully expect[ed] to be convicted of the lesser charge" and therefore did not care who was on the jury, the trial court reminded defendant that the prosecutor "has offered a plea to that charge." Defendant responded:

> I've already served . . . more times than my guidelines—than my guidelines request, sir. So, if I'm convicted of that charge, my time is served. The prosecution's not offering me any kind of a deal whatso—He never was offering me a deal.

When the court asked defendant if he understood what the offer from the prosecutor was, defendant stated, "Yes, that offer is I serve seven and half [sic] months, time served. My guidelines are six months for the charge if I'm convicted."

On this record, we have no confidence that defendant understood the nature of the proceedings during the final pretrial hearing. When first asked if he understood the plea offer, defendant believed initially that he would be able to challenge the prosecution's evidence during that hearing, believing that it was the time to "determine whether or not the charges carry over." Defendant did not appear to understand that even though he had a preliminary examination, he would still have an opportunity to show a lack of probable cause for the possession with intent charge.

Moreover, the colloquies between the court and defendant concerning the prosecution's plea offer intertwined with the discussion of jury instructions for the lesser included offense. Both the plea offer and the jury instructions related to a charge of simple possession. It is clear from the record that defendant did not understand the distinction between the two concepts, as he seemed to discuss each in the context of the other. And although the trial court made attempts to explain to defendant that if he accepted the plea deal, he would only be convicted of a charge he already admitted to, it is clear defendant did not understand what the consequences would be. Given defendant's admission to possession of methamphetamine, defendant faced no adverse consequences by taking the prosecutor's offer to plead to time served with no probation. By going to trial and "roll[ing] the dice," defendant had nothing to gain and everything to lose. We are therefore convinced that had defendant been represented by counsel at this stage of the proceedings, there is a high likelihood the outcome would have been different because defendant would have accepted the plea offer.

Defendant's convictions are vacated, and the case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick